FILED
IN CLERKS OFFICE
2026 AUG 27 P 12:24
U.S. DISTRICT COURT
DISTRICT OF MASS.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

KENNY VERLUS,

Plaintiff,

v.

TRANS UNION, LLC,

Defendant.

Civil Action No. ____________

**JURY TRIAL DEMANDED**

## COMPLAINT

1. This is an action under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Plaintiff Kenny Verlus asked Defendant Trans Union, LLC to tell him what it knows about him. Section 1681g(a)(1) required Defendant to clearly and accurately disclose all information in his file. Defendant did not.

2. On September 9, 2025, Plaintiff requested and received his consumer file disclosure from Defendant, File Number 423502635 (the "Disclosure"). He requested it for the reason the statute exists: to see the information Defendant maintains and sells about him, and to determine whether that information is accurate.

3. The Disclosure did not permit him to do that. Across seven consumer tradelines furnished by six unrelated creditors, the monthly payment history Defendant displayed stops short of the activity that Defendant's own dated fields, printed inches away within the same tradeline, state that Defendant recorded. Defendant reports that it updated the Barclays Bank Delaware account on August 24, 2025, and then displays no rating for August 2025. Defendant reports that a payment was made on the GM Financial automobile loan on August 21, 2025, and

then displays no rating for August 2025. The pattern repeats, tradeline after tradeline, in the same shape.

4. In two instances the Disclosure contradicts itself on its face. Defendant reports the Austin Capital Bank SSB account as ">Paid, Closed; was 30 days past due date<" while every one of the eight months of payment history it displays for that account is rated "OK," which Defendant's own key defines as "Current, paying or paid as agreed." Defendant reports the Teachers Federal CU account as opened on 08/17/2021 and closed on 08/17/2021, the same day, and then reports that the account carried a high balance of $9,980, received a payment on 03/30/2022, and generated forty-seven months of payment ratings. Both statements cannot be true. The data reconciling them is in Defendant's possession and was withheld from the consumer to whom the statute owed it.

5. Plaintiff brings a single claim, pled willfully under 15 U.S.C. § 1681n and, in the alternative, negligently under 15 U.S.C. § 1681o. He seeks actual and statutory damages, punitive damages, costs, and an order compelling Defendant to furnish a complete and corrected file disclosure.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 15 U.S.C. § 1681p and 28 U.S.C. § 1331, because this action arises under the laws of the United States.

7. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District, received the Disclosure in this District, and suffered the injuries alleged in this District, and under § 1391(b)(1) and (c)(2) because Defendant is subject to personal jurisdiction in this District and regularly transacts business here.

8. This action is timely under 15 U.S.C. § 1681p. The Disclosure that is the subject of this action was generated on September 9, 2025, and Plaintiff discovered the violations alleged herein upon reviewing it.

## PARTIES

9. Plaintiff Kenny Verlus is a natural person and a "consumer" within the meaning of 15 U.S.C. § 1681a(c). He resides in Cambridge, Massachusetts.

10. Defendant Trans Union, LLC is a limited liability company with its principal place of business at 555 West Adams Street, Chicago, Illinois 60661. Defendant is a "consumer reporting agency" within the meaning of 15 U.S.C. § 1681a(f), and a nationwide consumer reporting agency within the meaning of 15 U.S.C. § 1681a(p). Defendant regularly assembles and evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and does so for monetary fees.

## FACTUAL ALLEGATIONS

### A. The September 9, 2025 File Disclosure

11. On September 9, 2025, Plaintiff obtained his file disclosure from Defendant. The Disclosure states "Date Created 09/09/2025" and "File Number: 423502635." It runs forty-five pages. A true and complete copy is attached as Exhibit A.

12. The Disclosure states: "You have been on our files since 01/29/2007."

13. The Disclosure contains eight consumer tradelines, of which seven are the subject of this action. It contains no public records. Its inquiry section is captioned "Account Review Inquiries" and lists transmissions of Plaintiff's file to numerous third parties, identified below.

14. The Disclosure sets out Defendant's own rating key. That key defines "OK" as "Current, paying or paid as agreed," defines "N/R" as "Not Reported," and defines "X" as "Unknown."

**B. Defendant's Possession of the Omitted Information**

15. The claim in this action is not that fields on the Disclosure are blank. The claim is that Defendant possesses the omitted information and failed to disclose it clearly and accurately, as § 1681g(a)(1) requires.

16. First, the Disclosure contradicts itself. A single document that states two different things about the same fact establishes that the underlying data exists and that Defendant has misreported it. Defendant cannot simultaneously report that Plaintiff was thirty days past due on the Austin Capital Bank SSB account and report eight consecutive months of "OK" ratings covering that account's entire displayed life. Defendant cannot simultaneously report that the Teachers Federal CU account opened and closed on the same day and report forty-seven months of ratings, a $9,980 high balance, and a payment received seven months after the reported closure. In each instance Defendant holds data it did not disclose.

17. Second, Defendant's own annotations prove its custody of the omitted data. For each tradeline Defendant prints a "Date Updated" field stating the date on which Defendant last updated that tradeline. On seven tradelines, that date falls in a month for which Defendant displays no payment rating at all. Defendant thereby states, in its own field, that it processed data for a month whose row it declines to show. The same is true of Defendant's "Last Payment Made," "Date Paid," "Payment Received," and "Date Closed" fields, each of which places dated activity inside a month the payment grid omits.

18. Third, Defendant's own remarks prove that it has actively worked these tradelines. On the Barclays Bank Delaware tradeline Defendant printed the remark "Completed investigation of FCRA dispute-consumer disagreed." On the GM Financial 11106545 tradeline and the Capital One tradeline Defendant printed the remark "Account previously in dispute-now resolved. reported by credit grant." Defendant thus reviewed, investigated, and reprocessed the very tradelines whose data it now presents incompletely. The records generated by those investigations are in Defendant's files and were not disclosed.

19. Fourth, on information and belief, furnishers report to Defendant monthly through the Metro 2 format, and the standard Metro 2 base segment carries Account Status, Payment Rating, Current Balance, Amount Past Due, Credit Limit, Highest Credit, Actual Payment Amount, Scheduled Monthly Payment, Date of Last Payment, and Date of Account Information for each reporting cycle. Defendant receives, stores, and maintains those monthly transmissions. The monthly data points absent from Plaintiff's payment grids were furnished to Defendant and reside in Defendant's files.

20. Fifth, on information and belief, Defendant sells to its subscribers consumer report products that display, for each tradeline, the monthly payment and status data for periods left blank or unrated on the consumer's own file disclosure. Defendant possesses and monetizes information about Plaintiff that it withholds from Plaintiff.

21. On information and belief, the data described in the preceding paragraphs resides in Defendant's dispute-processing, file-maintenance, and disclosure-generation systems, and in the consumer report products Defendant transmitted to the third parties identified in Section E below.

22. Whether the omitted and internally contradictory fields on the Disclosure reflect furnisher non-reporting, as Defendant will presumably contend, or Defendant's maintenance and withholding of data it in fact possesses, as Plaintiff alleges, is a factual question ascertainable only from Defendant's own systems and from the consumer report products Defendant transmitted to the third parties identified herein. Plaintiff will seek that data in discovery.

**C. The Deficient Tradelines**

23. ACHIEVE PERSONAL LOANS, account number APP0633****. The Disclosure states "Date Opened 10/31/2019," "Date Updated 08/27/2020," "Last Payment Made 08/20/2020," "Payment Received $7,742," "Date Closed 08/27/2020," and "Pay Status Paid, Closed; was Paid as agreed." The payment history begins with November 2019 and ends with July 2020, and states "Total Months: 9." No rating is displayed for August 2020, the month in which Defendant's own fields state that a payment of $7,742 was received, the account was paid, and the account was closed.

24. AUSTIN CAPITAL BANK SSB, account number 800505****. The Disclosure states "Date Opened 04/05/2021," "Date Updated 01/18/2022," "Payment Received $15," "Last Payment Made 01/18/2022," "Date Closed 01/18/2022," "High Balance $1,000," and "Pay Status >Paid, Closed; was 30 days past due date<." The payment history begins with May 2021 and ends with December 2021, and states "Total Months: 8." Every one of those eight months is rated "OK." No rating is displayed for April 2021 or for January 2022. The thirty day delinquency that Defendant affirmatively reports in the Pay Status field appears nowhere in the payment history Defendant displays, and the only two months Defendant omits are the two months in which that delinquency could be recorded.

25. BARCLAYS BANK DELAWARE, account number 00030392191****. The Disclosure states "Date Opened 01/27/2018," "Date Updated 08/24/2025," "Balance $6,236," "Past Due $6,236," "Pay Status >Charge-off<," and the remark "Completed investigation of FCRA dispute-consumer disagreed; CLOSED BY CREDIT GRANTOR; UNPAID BALANCE CHARGED OFF." The payment history begins with October 2018 and ends with July 2025, and states "Total Months: 82." No rating is displayed for the eight months from February 2018 through September 2018, which follow the reported opening of the account, and no rating is displayed for August 2025, the month in which Defendant's own field states that Defendant updated the tradeline. Nine monthly data points are absent from a tradeline reporting an unpaid charged off balance of $6,236.

26. GM FINANCIAL, account number 11106545****. The Disclosure states "Date Opened 11/08/2022," "Date Updated 08/25/2025," "Last Payment Made 08/21/2025," "Balance $20,681," "High Balance $27,502," "Monthly Payment $618," "Pay Status Current Account," and the remark "Account previously in dispute-now resolved. reported by credit grant; REDEEMED REPOSSESSION." The payment history begins with December 2022 and ends with July 2025, and states "Total Months: 32." No rating is displayed for August 2025, the month in which Defendant's own fields state both that a payment was made and that Defendant updated the tradeline. In addition, eleven of the thirty-two displayed months are rated "X," which Defendant's own key defines as "Unknown." Those eleven months are February 2023, March 2023, April 2023, May 2023, August 2023, October 2023, November 2023, December 2023, June 2024, August 2024, and October 2024. On an open automobile loan that Defendant reports as a "Current Account" with a $20,681 balance, Defendant discloses that it does not know how

Plaintiff paid for eleven months, while continuing to report the account and to furnish it to third parties.

27. TEACHERS FEDERAL CU, account number 403695102058****. The Disclosure states "Date Opened 08/17/2021," "Date Closed 08/17/2021," "Date Updated 07/25/2025," "Last Payment Made 03/30/2022," "Balance $9,969," "High Balance $9,980," "Credit Limit $10,000," "Past Due $9,969," and "Pay Status >Charge-off<." The payment history begins with August 2021 and ends with June 2025, and states "Total Months: 47." No rating is displayed for July 2025, the month in which Defendant's own field states that Defendant updated the tradeline. Further, the Disclosure reports that this account was opened and closed on the same calendar day and simultaneously reports that it accumulated a high balance of $9,980, received a payment on March 30, 2022, and generated forty-seven months of payment ratings. Those statements cannot all be accurate, and the Disclosure gives Plaintiff no means of determining which is wrong.

28. CAPITAL ONE, account number 517805859991****. The Disclosure states "Date Opened 06/27/2017," "Date Updated 08/28/2020," "Last Payment Made 08/28/2020," "Date Paid 08/28/2020," "Date Closed 08/23/2020," "High Balance $3,114," "Credit Limit $3,300," and the remark "Account previously in dispute-now resolved. reported by credit grant; CLOSED BY CREDIT GRANTOR; CLOSED." The payment history begins with July 2017 and ends with July 2020, and states "Total Months: 37." No rating is displayed for August 2020, the month in which Defendant's own fields state that the account was closed, was paid, received its last payment, and was updated.

29. GM FINANCIAL, account number 45834****. The Disclosure states "Date Opened 09/14/2015," "Date Updated 04/30/2018," "Last Payment Made 04/30/2018," "Date Closed 04/30/2018," "High Balance $14,715," and "Pay Status Paid, Closed; was Paid as

agreed." The payment history begins with October 2015 and ends with March 2018, and states "Total Months: 30." No rating is displayed for April 2018, the month in which Defendant's own fields state that the final payment was made, the account was closed, and the tradeline was updated.

**D. The Aggregate Pattern**

30. The deficiencies identified above are not confined to one furnisher, one account type, or one period. They appear on installment loans and revolving accounts, on open accounts and closed accounts, on accounts reported as paid as agreed and accounts reported as charged off, and on tradelines furnished by six unrelated creditors: Achieve Personal Loans, Austin Capital Bank SSB, Barclays Bank Delaware, GM Financial, Teachers Federal CU, and Capital One.

31. On all seven tradelines, the same defect takes the same form: the monthly payment grid terminates before the date stated in Defendant's own "Date Updated" field for that tradeline. Unrelated furnishers reporting through different channels over a ten year span do not independently produce an identical omission. A defect that uniform is the product of Defendant's own disclosure-generation practice.

32. In total, the Disclosure omits any payment rating for sixteen months on which Defendant's own dated fields place account activity or a Defendant update, and displays an additional eleven months rated "Unknown." The Disclosure therefore fails to disclose, or affirmatively disclaims knowledge of, not fewer than twenty-seven monthly data points across the seven tradelines at issue. An itemized inventory of these deficiencies, keyed to the verbatim text of the Disclosure, is attached as Exhibit D.

**E. Dissemination to Third Parties**

33. The Disclosure records that Defendant transmitted Plaintiff's consumer file to numerous third parties. Defendant's own text in that section states that the listing of a company means "they obtained information from your credit file."

34. Specifically, and as evidenced on the face of the Disclosure, Defendant transmitted Plaintiff's consumer file to the following entities on the following dates: GM Financial on September 7, 2025; T-Mobile on September 6, 2025; AIG Property Casualty on September 5, 2025; Kream Kream on August 25, 2025; Barclays Bank Delaware on August 10, 2025; Surety Solutions Ins on August 10, 2025; Apple Card GS Bank on April 16, 2025; JPMorgan Chase Bank NA on March 6, 2025; Fiserv CheckFree Corp on September 7, 2024; Giggle LLC on July 16, 2024; Monevo Inc on June 24, 2024; Weltman Weinberg and Reis on February 5, 2024; and Portfolio Recovery Associates on October 29, 2023.

35. Each transmission identified in the preceding paragraph is a discrete act by Defendant, on a discrete date, conveying to a third party a consumer file containing the same data Defendant declined to disclose completely and accurately to Plaintiff himself.

36. Of the thirteen recipients identified above, eleven have no corresponding tradeline anywhere on the Disclosure. No account with T-Mobile, AIG Property Casualty, Kream Kream, Surety Solutions Ins, Apple Card GS Bank, JPMorgan Chase Bank NA, Fiserv CheckFree Corp, Giggle LLC, Monevo Inc, Weltman Weinberg and Reis, or Portfolio Recovery Associates appears anywhere on Plaintiff's Disclosure.

**F. Willfulness**

37. Defendant's conduct was willful within the meaning of 15 U.S.C. § 1681n and Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 69 (2007), because Defendant's reading

of § 1681g(a)(1) is objectively unreasonable and Defendant ran a risk of violating the statute substantially greater than the risk associated with a merely careless reading.

38. Defendant has direct and current regulatory notice of what § 1681g(a)(1) requires. On January 23, 2024, the Consumer Financial Protection Bureau published its Advisory Opinion, Fair Credit Reporting; File Disclosure, 89 Fed. Reg. 4167, which states that a consumer reporting agency must disclose all information in the consumer's file and must do so in a form and manner that permits the consumer to understand and use it. A copy is attached as Exhibit B. The Disclosure was generated more than nineteen months after that publication.

39. The obligation is not novel. On June 30, 2000, the Federal Trade Commission issued an advisory opinion addressing the scope of a consumer reporting agency's file disclosure obligation under § 1681g. A copy is attached as Exhibit C. Defendant has had more than twenty-five years of notice of the standard it failed to meet.

40. The uniformity of the defect across six unrelated furnishers, ten years of reporting history, and every account type on the Disclosure establishes that the omissions are the product of a deliberate practice rather than isolated error. See Williams v. First Advantage LNS Screening Solutions, Inc., 947 F.3d 735 (11th Cir. 2020).

41. Defendant's own annotations aggravate rather than excuse its conduct. On the Barclays Bank Delaware tradeline Defendant recorded that it "Completed investigation of FCRA dispute-consumer disagreed." Defendant thus knew that Plaintiff contested the accuracy of that tradeline, investigated it, and nonetheless issued a disclosure omitting nine months of its payment history.

42. Defendant knew or recklessly disregarded that a file disclosure which omits the monthly data underlying its own reported conclusions, and which contradicts itself on the face of the same page, does not clearly and accurately disclose all information in the consumer's file.

**G. Damages**

43. Plaintiff was denied the information the statute entitles him to receive. He cannot verify, from the Disclosure, the accuracy of $36,886 in reported derogatory balances, consisting of $6,236 reported on the Barclays Bank Delaware account, $9,969 reported on the Teachers Federal CU account, and $20,681 reported on the GM Financial 11106545 account.

44. Because the Disclosure omits the monthly data underlying those balances and contradicts itself as to two of the tradelines, Plaintiff's ability to exercise his dispute rights under 15 U.S.C. § 1681i in an informed manner has been impaired. A consumer cannot frame a meaningful dispute about a delinquency that his disclosure asserts in one field and denies in another, or about eleven months of payment history his own credit reporting agency labels "Unknown."

45. The injury is not merely informational. Defendant transmitted Plaintiff's consumer file to the thirteen third parties identified in Section E above, on the dates identified there, while withholding from Plaintiff the data necessary to determine whether what it transmitted was accurate.

46. Plaintiff has suffered emotional distress. Plaintiff has been working to rebuild his credit standing, and the Disclosure shows a pattern of recent activity on his file. Receiving a forty-five page document that purports to be the complete contents of his file, and finding that it contradicts itself about whether he paid an account on time, that it labels nearly a year of payments on his current automobile loan "Unknown," and that it reports an account as opened

and closed on the same day while charging him $9,969 on it, has caused Plaintiff frustration, anxiety, and a loss of confidence in the accuracy of the file that Defendant sells to third parties about him.

47. Plaintiff has expended time and resources reviewing the Disclosure, cross-referencing its internal fields against its payment grids, compiling the itemized inventory attached as Exhibit D, and preparing this action.

**COUNT I**

**Willful Violation of 15 U.S.C. § 1681g(a)(1)**

**15 U.S.C. § 1681n**

48. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 47 above.

49. Section 1681g(a)(1) requires that every consumer reporting agency, upon request, "clearly and accurately disclose to the consumer ... [a]ll information in the consumer's file at the time of the request." The term "file" is defined broadly at 15 U.S.C. § 1681a(g) to mean all of the information on a consumer recorded and retained by a consumer reporting agency regardless of how the information is stored. See Gillespie v. Trans Union Corp., 482 F.3d 907 (7th Cir. 2007).

50. Defendant violated § 1681g(a)(1) by failing to clearly and accurately disclose all information in Plaintiff's file. Specifically, Defendant omitted any payment rating for sixteen months on which its own dated fields place account activity or a Defendant update; disclaimed knowledge of eleven additional months by rating them "Unknown"; reported the Austin Capital Bank SSB account as thirty days past due while displaying eight months of "OK" ratings and omitting the only two months in which the delinquency could appear; and reported the Teachers

Federal CU account as opened and closed on the same day while reporting forty-seven months of history, a $9,980 high balance, and a payment received seven months later.

51. A file disclosure that leaves the consumer unable to determine whether the information reported about him is accurate does not comply with § 1681g(a)(1). See Alexander v. Equifax Information Services, LLC, 2018 WL 3025939 (D. Nev. 2018).

52. Defendant's violation was willful. Defendant acted knowingly, or in reckless disregard of its obligations under § 1681g(a)(1), for the reasons alleged in Section F above, including the CFPB's January 23, 2024 Advisory Opinion, the FTC's June 30, 2000 advisory opinion, the uniformity of the defect across six unrelated furnishers, and Defendant's own recorded investigation of the Barclays Bank Delaware tradeline.

53. As a result of Defendant's willful violation, Plaintiff is entitled to actual damages or statutory damages of not less than $100 and not more than $1,000 under 15 U.S.C. § 1681n(a)(1)(A), punitive damages under 15 U.S.C. § 1681n(a)(2), and costs under 15 U.S.C. § 1681n(a)(3).

## COUNT II

**Negligent Violation of 15 U.S.C. § 1681g(a)(1), Pled in the Alternative**

**15 U.S.C. § 1681o**

54. Plaintiff realleges and incorporates by reference the allegations of paragraphs 1 through 47 above.

55. Pled in the alternative to Count I, and only in the event the trier of fact does not find Defendant's conduct willful, Defendant negligently failed to comply with 15 U.S.C. § 1681g(a)(1) in the respects alleged above.

56. As a result of Defendant's negligent violation, Plaintiff is entitled to actual damages under 15 U.S.C. § 1681o(a)(1) and costs under 15 U.S.C. § 1681o(a)(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

57. Enter judgment in favor of Plaintiff and against Defendant on Count I;

58. Award Plaintiff actual damages, or statutory damages of not less than $100 and not more than $1,000 per violation, under 15 U.S.C. § 1681n(a)(1)(A);

59. Award Plaintiff punitive damages under 15 U.S.C. § 1681n(a)(2) in an amount to be determined by the trier of fact;

60. In the alternative, enter judgment in favor of Plaintiff on Count II and award actual damages under 15 U.S.C. § 1681o(a)(1);

61. Order Defendant to furnish Plaintiff a complete and corrected file disclosure that clearly and accurately discloses all information in his file, as 15 U.S.C. § 1681g(a)(1) requires;

62. Award Plaintiff his costs under 15 U.S.C. § 1681n(a)(3) and § 1681o(a)(2);

63. Plaintiff reserves the right to seek leave to amend to assert additional claims that may be revealed through discovery; and

64. Grant such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Kenny Verlus
Kenny Verlus

20 Walden Square road apt. 511
Cambridge, MA 02140
Kverlus@gmail.com

Dated: 8-27-26